Bartlett, J.
The plaintiff, who owns premises on Boerum place, in the city of Brooklyn, brings this action to restrain the defendant corporation from entering upon that portion of the street opposite his property, for the purpose of constructing its proposed railway thereon. He claims, first, that the defendant has acquired no authority whatever to build its railroad in any of the streets of the city; and, in the second place, that even if it has a legal right to enter upon the streets so .far as the public is concerned, it cannot lawfully occupy that part of Boerum place fronting his land without making compensation therefor.
If the action can be maintained on the first ground it will be necessary to consider the second.
The defendant claims' to be organized under chapter 697 of the Laws of 1866, relating to cable companies, and also under the general railroad act. Its purpose, as stated in its articles of association, is to maintain and operate a railway for public use, in the conveyance of persons and property by means of a propelling rope or cable attached to a stationary power, from South ferry and Fulton ferry, in the city of Brooklyn, to Jamaica, in the county of Queens, upon, over and through certain streets and avenues in Brooklyn, and from East Hew York to Jamaica, over the route of the railway now operated by the Long Island Railroad Company.
Under this organization, the defendant asserts the right to_ construct its proposed railroad in the streets of Brooklyn, without in any manner obtaining the assent of the property owners on the streets through which the proposed line is to run.
Of itself, the general railroad act confers no authority upon any company formed thereunder, to build in a city street. It expressly provides that nothing therein contained shall be construed to authorize the construction of any railroad not already located in, upon, or across any streets in any city, without the assent of the corporation of such city. Laws 1850, chap. 140, § 28, subd. 5; amended by Laws 1880, chap. 133, but unchanged in this respect. So far as the construction of its railroad in a city is concerned, therefore, a corporation organized under this act acquires only the privilege of applying to the municipal corporation for permission to build in or across particular streets. If this permission is not granted by the city, the road cannot be built there. Under the statute, the municipal authorities become the proximate source of power from *862 which the right to construct a railway in the street must be obtained.
In 1854 by chapter 140 of the Laws of that year, entitled an Act relative to the construction of railroads in cities, the Legislature imposed a limitation upon the power of municipal corporations to give the consent provided for in the general railroad act, and expressly forbade the common councils of the several cities of this state from permitting to be constructed in any street or avenue, any passenger railroad commencing and ending in the city, “without the consent thereto of a majority in interest of the owners of property upon the streets in which said railroad is to be constructed being first had and obtained.”
Here we have then a distinct and positive rule laid down, by statute and applicable generally to the cities of the state, to the effect that no passenger railway shall be constructed in the streets without the consent of the municipal corporation, and that the municipal corporation shall not give such consent, where the railroad begins and ends in the city, unless a majority of the property owners upon the streets have also consented.
Proceeding a step further we find still another limitation upon the power of the municipal authorities to consent to the construction of railways in city streets, which limitation relates solely to Brooklyn. The existing charter provides that it shall not be lawful hereafter to lay, construct or operate any railroad in, upon or along any or either of the streets or avenues in the city of Brooklyn, “wherever such railroad may commence or end, unless the majority of the owners of property upon the streets or avenues, along which said railroad is to be constructed, shall first petition the common council of said city therefor; nor unless the said common council shall authorize the construction of such railroad and the grant therefor shall have been awarded and given to the person who will agree, with adequate security, to carry passengers on such railroad at the lowest rate of fare.” Laws 1873, chap. 863, title 19, section 23. The same section excepts various existing and specially-named railroad companies from its operation, and also “such other companies as are or may be authorized by law.” I do not think this latter exception can be held to include the defendant; for, as already shown, the defendant by virtue of its organization under the general railroad act acquired no right to build in a city street, but only the privilege of applying to the municipal corporation for permission to do so. Furthermore, the expression, “authorized by law,” in the section of the charter to which reference has been made, means, in my opinion, authorized by special act, and the defendant is not so authorized.
*863 To sustain the claim of the company here, that it is entitled to build its road in and upon the streets of Brooklyn, without the assent of any portion of the property owners, would be to ignore this plain provision of the charter. I can find no warrant for so doing. The provision clearly limits the power of the common council of Brooklyn to give the consent contemplated by the general railroad act, which is an essential prerequisite to the building of any railroad in the streets of the city by a corporation created pursuant to that act. A consent given in disregard of this limitation must be deemed in the view of the law to be no consent at all; and without the required consent of the municipality it cannot be pretended for a moment that the proposed construction is authorized. It may, perhaps, be said that the proceeding by way of petition on the part of the property owners, for which the charter provides, is cumbrous and puts unnecessary obstacles in the way of obtaining a desired franchise, but that is a matter for the determination of the legislature, which may properly place general restrictions upon the granting of privileges to public corporations. However, I am unable to see that a corporation find much more difficulty in securing the acquiescence of property owners in the form of a petition than in the form of a simple consent.
In my opinion, then, the defendant has not acquired the right to lay down and operate a railroad in the streets of the city of Brooklyn, for the reason that the consent of the common council is not based upon the assent of a majority of property upon the streets through which the railroad is to be constructed, as prescribed by the city charter.
Upon the argument there Avas considerable discussion as to how far the undertaking of the defendant is affected, if at all, by the constitutional amendment of 1875, which declares that no law shall authorize the construction or operation of a street railroad except upon condition that the consent of the property owners be obtained, or the determination of a supreme court commission in lieu thereof. With reference to the bearing of that amendment upon the questions presented in this case, it should be observed that at the time it took effect there was no law authorizing the construction of street railways in Brooklyn without the assent of a majority of the property owners. I have no doubt that the defendant’s proposed railway within the city limits is a street railroad within the meaning of the constitution. The requirement of consent on the part of the property owners which is found in the charter could not be abrogated, therefore, except by an enactment which should comply Avith the constitution by still requiring either such consent or the decision of commissioners as a substi *864 tute for it. Repealing legislation which should dispense with the existing requirement of consent by the property owners would be as unconstitutional as affirmative legislation assuming to authorize the building of street railroads without such consent. I may add that while companies organized under the rapid transit and street railroad acts are properly exempted from the charter provisions under consideration here, the validity of the exemption seems to me due to the fact that the legislature in passing both laws obeyed the command of the constitution by requiring the consent of the property owners, or its constitutional equivalent, the favorable decision of a commission appointed by the court.
The intention of the company here to construct its road without the consent of the abutting property owners is sufficiently manifest not only from the admission to that effect in the pleadings, but from the confident assertion on the trial of its right to do so. Its claim in this respect cannot be sustained. Under the authority of Milhau v. Sharp (27 N. Y., 611), therefore, the structure which the defendant proposes to erect is to be deemed a nuisance, and the plaintiff lias satisfactorily made out his right to maintain the action, as a property owner to whom it would be particularly injurious. The allegations of damage in the complaint are not denied by the answer, and may be taken to be true.
There should be judgment for the plaintiff with costs, awarding him an injunction against the proposed occupation by the defendant of that part of the street near his premises.
Dykman, J.
The judgment and order appealed from should both be affirmed on the opinion of the court below with costs.
Barnard and Pratt, JJ., concur.